NELLIE A. COLLINS, as Administratrix, etc., of JOHN COLLINS, Deceased, Appellant, v. JOHN C. McGUIRE, Respondent.

*Appeal — a decision on conflicting evidence not disturbed — what is not evidence of an offer to compromise — objection to secondary evidence cured by the introduction of the best evidence — proof as to the existence of better evidence — discretionary power of the court over evidence to prove bias — testimony of a party to personal transactions with another party to an action — effect of the death of the latter during the trial.*

The decision of a referee, rendered upon conflicting evidence, will not be disturbed by the Appellate Division, unless the preponderance of evidence in favor of the defeated party is so great that it can be said, with reasonable certainty, that the findings of the referee are erroneous.

The admission of testimony as to a conversation between the plaintiff and the defendant, in which the plaintiff used the expression, "settle up this matter," does not violate the rule prohibiting the reception in evidence of offers made by way of compromise, where it appears that the term "settle" did not refer to the compromise of a claim or concessions based upon a recognized claim, but to a determination of the facts in dispute by the persons who took part in the transaction.

Assuming that the best evidence of a transfer of stock is the certificate itself, the error involved in the admission of oral testimony that the stock had been transferred is cured by the subsequent admission of the certificate.

The objection that parol evidence that the governors of the Cotton Exchange had taken proceedings against a witness for the defendant upon the charge that he had violated a certain rule of the exchange and that such charge was dismissed, was incompetent, upon the ground that the records of the Cotton Exchange were the best evidence thereof, is untenable where it does not appear that the Cotton Exchange kept any such records.

Where upon the cross-examination of a witness for the defendant, the plaintiff is permitted to prove bias on the part of the witness, by showing that, at the instance of the plaintiff, certain proceedings had been instituted against the witness, the referee may, in his discretion, refuse to allow the plaintiff to show additional grounds for bias on the part of the witness, involving disputes between the plaintiff and other members of the witness' family.

Where the defendant testifies on his own behalf to personal transactions with the plaintiff, the subsequent death of the plaintiff, during the hearing and before he had been called as a witness, does not render such testimony incompetent or entitle the plaintiff's administrator, upon being substituted as the plaintiff, to have such testimony stricken out on the ground that it is in violation of section 829 of the Code of Civil Procedure, as the competency of a witness depends entirely upon the facts as they existed at the time his testimony is given.

APPEAL by the plaintiff, Nellie A. Collins, as administratrix, etc., of John Collins, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 10th day of March, 1902, upon the report of a referee.

*Lawrence E. Brown,* for the appellant.

*John C. McGuire,* respondent, in person.

JENKS, J.:

The plaintiff appeals from a judgment for $2,056 for the defendant, entered upon the report of a referee. The plaintiff declared upon three causes of action: (1) For a balance due upon a loan; (2) upon a promissory note for $3,000, made by the defendant to the plaintiff; and (3) for a balance due in the buying and selling of cotton wherein the plaintiff was the broker of the defendant. The defendant answered, *first,* that he had discharged the balance by the transfer of certain shares of stock which were accepted in payment; *second,* he admitted the making and delivery of the note; and, *third,* he pleaded that the plaintiff did not fully account to him or credit him with the profits of certain transactions. He counterclaimed a payment of $5,026.27 on account of the plaintiff. The plaintiff replied that such payment had been made by special agreement on account of an indebtedness to the plaintiff. The learned referee found that the balance covered by the first cause of action had been paid, allowed the second cause of action, found a balance due to plaintiff for the third cause of action, and found for the defendant upon the counterclaim. The judgment represents the counterclaim, less the amounts found as due to the plaintiff.

We should not disturb the decision of a referee upon the contested facts unless the preponderance of evidence in favor of the defeated party was so great that it can be said with reasonable certainty that the findings of the referee are erroneous. (*Burton Co. v. Cowan,* 80 Hun, 393, per CULLEN, J.; affd. on opinion below, 150 N. Y. 583; *Lowery* v. *Erskine,* 113 id. 52, 55; *Barnard* v. *Gantz,* 140 id. 249.) In this case we are of opinion that the findings are sustained by a clear preponderance of the proof.

The record bristles with exceptions to the rulings, of which all have been considered and some will be discussed. *First*, it is urged that, under the rule announced in *Tennant* v. *Dudley* (144 N. Y. 504), "no advantage can be taken of offers made by way of compromise;" that the referee erred in permitting under objection, and in refusing to strike out, the testimony of the defendant that the plaintiff said to him: "Well now, Mr. McGuire, here is Oscar and here you are, and we had better *settle* up this matter. * * * Now you and Oscar *settle* it; * * * you and Oscar can go and *settle* this matter," etc. At the time of these conversations there was a dispute between the parties based upon the said transaction in cotton. *First*, the term "*settle*" did not refer to any compromise of a claim or concessions based upon a recognized claim, but to a determination of the facts in dispute by the persons who had the more direct part in the transaction. *Second*, I think that the referee properly permitted the defendant to testify as to any conversations held with the plaintiff bearing upon the transfer of the stock, when the point in controversy was whether the stock was taken as collateral or in liquidation. The point made is that the referee said that his declaration was *in*admissible, and yet thereafter admitted the testimony. It is quite evident that *inadmissible* should read *admissible*, or if the word, as printed, was used, then the immediate ruling of the referee was merely the correction of an erroneous decision. If, as contended, the certificate itself was the best evidence of the transfer of the stock, the mere statement embodied in the conversation that the "stock was transferred" was cured by the subsequent admission of the certificate. *Third*, a witness called by the defendant was asked upon cross-examination whether proceedings had not been taken against him before the governors of the Cotton Exchange upon a charge that, contrary to the rules of the exchange, he had traded for the son and representative of the plaintiff. He answered that such proceedings had been taken. The witness was then asked upon the redirect whether the proceedings consisted of a complaint to the supervising committee "that you traded for Oscar Collins as a clerk or representative of John Collins; that you traded with him personally, and that it was in violation of the rules of the Cotton Exchange?" This was objected to on the ground that "the complaint on file in the office

of the New York Cotton Exchange shows for itself what it was," and the objection was overruled. "Q. And what did the supervisory committee do with that charge? [Same objection, ruling and exception.] A. It was dismissed." It is now urged that the ruling was erroneous, inasmuch as the record was the best evidence. But there was no evidence whatever that there was any "record." Upon recross-examination the witness testified that "The charge made by John Collins against me was in writing. A copy of the charge was served upon me." The plaintiff then moved to strike out all of the testimony "with regard to these charges and the action of the New York Cotton Exchange on them on the ground that they are in writing. The presumption is that they are on file in the corporation's office, and they are the best evidence of the fact, and the evidence given is secondary." But, so far as the *disposition* of the charges is concerned, there was still no evidence that it was ever made of record or put in writing. *Fourth*, on the cross-examination of a witness called by the defendant, he was asked whether an action was not pending against his father by the original plaintiff for fraudulently charging him with the purchase of May, 1900, cotton, and the objection taken thereto was sustained. He was then asked whether the plaintiff had not brought similar proceedings against his father, and the objection was sustained. The learned counsel then repeated the question as to the proceedings brought against the father, saying : "I tried to show that the father and son were connected in the same transaction with Oscar Collins, and that proceedings were brought against them both." The learned referee ruled that the plaintiff might "show anything affecting the credibility of this witness, but not by showing his father was accused of anything." I think that no fault can be found with the limitation thus made. While it was competent to show the animus of the witness toward him against whom he testified (*Lamb* v. *Lamb*, 146 N. Y. 317), yet "the extent to which such an examination may go" must be in some measure within the discretion of the trial judge. (*Garnsey* v. *Rhodes*, 138 N. Y. 461, 467.) The learned referee permitted the cross-examining counsel to elicit the feelings of the witness toward the opposite party, and to show that at the instance of the plaintiff proceedings had been instituted against the witness. I think that it was a fair exer-

cise of discretion to check the cross-examination when the counsel sought to show merely additional grounds for bias which involved disputes or controversies with other members of the witness' family. The evidence, if admitted, was but cumulative and weaker in character, and to permit free range under such circumstances might render the case interminable. (*Garnsey* v. *Rhodes, supra,* 467.)

*Fifth.* The hearing began on April 15, 1901, and was continued until January 2, 1902. The plaintiff was not called as a witness. The defendant testified on his own behalf. Much of his testimony related to personal transactions with the plaintiff. On November 12, 1901, the plaintiff died, and the action was revived and continued by his administratrix. At the session of December nineteenth the learned counsel for the plaintiff made this motion : " It appearing that plaintiff is the administratrix, and that testimony has been offered of personal conversations and transactions between this defendant and the deceased during his lifetime, and that the administratrix has not offered any evidence on her part with regard to these conversations and transactions, I move that all testimony heretofore given on the part of the defendant, as to conversations and transactions with deceased during his lifetime, be stricken out, in violation of section 829 of the Code," which was denied under exception.

It appears from the record that the defendant was examined on various occasions between July 1, 1901, and October 25, 1901, inclusive. As the plaintiff died subsequent thereto, the question presented is whether the testimony, competent at the time it was given, was rendered incompetent by the subsequent death of the plaintiff while the action was in hearing. The learned counsel for the appellant has argued with earnestness and ability that, as the reason for the rule exists, the rule should obtain, the reason being that the lips of contradiction or explanation are forever closed. It is certainly true that such was the fact when the motion was made, but it was not the fact, and, therefore, the reason did not exist when the testimony was given. The motion to strike out was based upon section 829 of the Code of Civil Procedure. I am not cited to any authority directly *pro* or *con* upon the points of either counsel. I do not find that section 829 applies to the circumstances of the case. The authorities which I have found are against the appellant. In *Comins*

v. *Hetfield* (80 N. Y. 261) one of the defendants died during the hearing, and his attorney moved to strike out all of the testimony relating to personal transactions with deceased, but the motion was denied under exception. The court, per MILLER, J., say : " Section 399 of the Code has no application to such a case and cannot be invoked to sustain the motion. The testimony being entirely competent when it was admitted, and the plaintiff entitled to the benefit to be derived from the facts sworn to, the subsequent death of one of the defendants would not render it inadmissible. *The disqualification of the witness depended entirely upon the facts as they existed when he gave his testimony*, and not upon any change which subsequently occurred before the examination was completed." Section 829 is substantially section 399 of the old Code. And no discrimination is to be made because there were two defendants in *Comins'* case, one of whom survived, for it will be seen that the motion was limited to striking out the personal transaction with Culver, while the court puts its reasoning upon the general proposition that the state of facts which existed *at the time* of giving the testimony must determine the question. I have found no other authority in the Court of Appeals decisions. In *Eighmie* v. *Taylor* (68 Hun, 573 ; reversed on different ground, 98 N. Y. 288) the court, per MARTIN, J., say : " When this evidence was offered she was clearly interested in the event of the action. The respondent contends that as she was not interested when the conversations and transactions occurred, she was competent at the time of the trial. We find no authority sustaining this claim. It was held in *Comins* v. *Hetfield* (80 N. Y. 261) that the disqualification under section 399 of the old Code depended entirely upon the facts as they existed at the time when the testimony was given." In *Matter of Budlong* (54 Hun, 131) the court, after discussing section 829, citing section 830, and also *McKnight* v. *Lewis* (5 Barb. 681, 685, and cases cited); *Morehouse* v. *Morehouse* (17 Abb. N. C. 407, 415); *Lawson* v. *Jones* (1 Civ. Proc. Rep. 247); *Comins* v. *Hetfield* (*supra*); *Galbraith* v. *Zimmerman* (100 Penn. St. 374) and *Pratt* v. *Patterson* (81 id. 114), says : " The rule at common law, as exhibited by the cases cited, is much more general than that embraced in the section of the Code above cited and rests upon the evident principle that the interest which disqualifies testimony must exist at the time the testimony is

given." I think then the rule is that disqualification under section 829 is determined by the facts existing at the time the testimony is given.

The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.